IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

DONNELL BRUNSON,

                    Petitioner,

          vs.

MR. CONWAY, Superintendent, Attica
Correctional Facility,

                    Respondent.

No. 9:10-cv-00806-JKS

MEMORANDUM DECISION

Donnell Brunson, a state prisoner appearing *pro se*, filed a Petition for a Writ of Habeas
Corpus under 28 U.S.C. § 2254.  Brunson is currently in the custody of the New York
Department of Corrections and Community Supervision, incarcerated at the Attica Correctional
Facility.  Respondent has answered, and Brunson has replied.

## I.  BACKGROUND/PRIOR PROCEEDINGS

Brunson was indicted by a Franklin County grand jury of one count of Murder in the
Second Degree, N.Y. Penal Law § 125.25[2], one count of Manslaughter in the First Degree,
N.Y. Penal Law § 125.20[1], and two counts of Assault in the Second Degree, N.Y. Penal Law §
120.05[1], [7].  Brunson was convicted in December 2001 by a jury of one count of
Manslaughter in the First Degree, N.Y. Penal Law § 125.20[1], and two counts of Assault in the
Second Degree, N.Y. Penal Law § 120.05[1], [7].  The trial court sentenced Brunson, as a
persistent violent felony offender, to concurrent, indeterminate prison terms of twenty-five years
to life.  While his appeal was pending, Brunson, appearing through counsel, filed a Motion to
Vacate the Judgment under New York Criminal Procedure Law § 440.10 ("CPL § 440.10

motion") in the Franklin County Court, which was denied in an unreported reasoned decision.

The Appellate Division, Third Department, affirmed Brunson's conviction and sentence and the

denial of his CPL § 440.10 motion, and the New York Court of Appeals denied leave to appeal

on June 9, 2010.[1]   Brunson timely filed his Petition for relief in this Court on June 29, 2010.

The crime was summarized by the Appellate Division:

> In May 2000, [Brunson], while confined to a special housing unit at Upstate
> Correctional Facility in Franklin County, brutally assaulted and ultimately caused the
> death of his cellmate (hereinafter the victim).  Thirty minutes after the assault began,
> correction officers finally gained entry to the cell and, after restraining [Brunson],
> found that the victim had been seriously injured.  The victim was immediately
> transported to a local hospital where he later died as a result of serious brain injuries
> that he sustained in the attack.[2]

## II.  GROUNDS RAISED/DEFENSES

In his Petition, Brunson raises nine grounds: (1) prejudicial error when the trial court

combined into one charge the separate defenses specified in New York Penal Law §§ 35.15[2](a)

and (b); (2) prejudicial error in instructing that Brunson had a duty to retreat under both New

York Penal Law § 35.15[2](a) and (b); (3) the trial court should have declared a mistrial when

several jurors observed Brunson wearing handcuffs with a bar and leg irons in the courthouse and

subsequently ordering that he be shackled during trial; (4) the trial court erroneously failed to

charge the jury on the definition of sodomy; (5) the trial court improperly sentenced Brunson; (6)

denial of effective assistance of trial counsel for failing to object to the instruction referred to in

the first ground; (7) denial of effective assistance of trial counsel for failing to object to the

---

[1] *People v. Brunson*, 892 N.Y.S.2d 261 (N.Y. App. Div. 2009), *lv. denied*, 933 N.E.2d
219 (N.Y. 2010).

[2] *Id.* at 263 (footnote omitted).

2

instruction referred to in the second ground; (8) ineffective assistance of trial counsel for failing to explain the terms of a plea bargain; and (9) ineffective assistance of trial counsel for failing to have Brunson examined by a psychologist/psychiatrist and/or review evidence prior to trial, or establish an intervening cause of death.  Respondent contends that Brunson did not properly exhaust his state-court remedies with respect to his instructional error claims, the first, second, and fourth grounds and that his first and second grounds are procedurally barred.  Respondent does not assert any other affirmative defense.[3]

### III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[4]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[5]  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory

---

[3] Rules Governing Section 2254 Cases in the U.S. Dist. Courts, Rule 5(b) (2011).

[4] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[5] *Williams*, 529 U.S. at 412 (alteration added).

power of the Supreme Court over federal courts.[6]  Thus, where holdings of the Supreme Court

regarding the issue presented on habeas review are lacking, "it cannot be said that the state court

'unreasonabl[y] appli[ed] clearly established Federal law.'"[7]  When a claim falls under the

"unreasonable application" prong, a state court's application of Supreme Court precedent must

be "objectively unreasonable," not just "incorrect or erroneous."[8]  The Supreme Court has made

clear that the objectively unreasonable standard is "a substantially higher threshold" than simply

believing that the state-court determination was incorrect.[9]  "[A]bsent a specific constitutional

violation, federal habeas corpus review of trial error is limited to whether the error 'so infected

the trial with unfairness as to make the resulting conviction a denial of due process.'"[10]  In a

federal habeas proceeding, the standard under which this Court must assess the prejudicial

impact of constitutional error in a state court criminal trial is whether the error had a substantial

and injurious effect or influence in determining the outcome.[11]  Brunson "bears the burden of

proving by a preponderance of the evidence that his constitutional rights have been violated."[12]

The Supreme Court recently underscored the magnitude of the deference required:

---

[6] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[7] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations in original) (citation omitted); *see also Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam).

[8] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[9] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams,* 529 U.S. at 410).

[10] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 643 (1974)).

[11] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[12] *Hawkings v. Castello*, 460 F.3d 238, 264 (2d Cir. 2006) (internal quotation marks and citations omitted).

As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin,* 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). *It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther.* Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia,* 443 U.S. 307, 332, n.5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.[13]

In applying this standard, this Court reviews the "last reasoned decision" by the state court.[14] Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[15] Although pre-AEDPA precedent established that deference is due to the findings of state appellate courts,[16] the Second Circuit has left the question open with respect to AEDPA cases.[17] In the absence of a clear indication from the Second Circuit to the contrary, this Court can find no principled reason not to

---

[13] *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011) (emphasis added).

[14] *Cf. Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) (explaining "how federal courts in habeas proceedings are to determine whether an unexplained order . . . rests primarily on federal law," and noting that federal courts must start by examining "the last reasoned opinion on the claim . . . . "); *Jones v. Stinson*, 229 F.3d 112, 118 (2d. Cir. 2000).

[15] 28 U.S.C. § 2254(e)(1); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary . . . ." (citing 28 U.S.C. § 2254(e)(1))).

[16] *Sumner v. Mata*, 449 U.S. 539, 547 (1981); *Ventura v. Meachum*, 957 F.2d 1048, 1055 (2d Cir. 1992).

[17] *See Boyette v. Lefevre*, 246 F.3d 76, 88 n.7 (2d Cir. 2001).

apply the same rule in the context of AEDPA, i.e., findings of a state appellate court are

presumed to be correct.

The petition must specify all the grounds for relief available to the petitioner and the facts

supporting each ground.[18]  As the Supreme Court has stated:

> Habeas Corpus Rule 2(c) is more demanding.  It provides that the petition must
> "specify all the grounds for relief available to the petitioner" and "state the facts
> supporting each ground."  See also Advisory Committee's Note on subd. (c) of
> Habeas Corpus Rule 2, 28 U.S.C., p. 469 ("In the past, petitions have frequently
> contained mere conclusions of law, unsupported by any facts.  [But] it is the
> relationship of the facts to the claim asserted that is important ... ."); Advisory
> Committee's Note on Habeas Corpus Rule 4, 28 U.S.C., p. 471 ("'[N]otice' pleading
> is not sufficient, for the petition is expected to state facts that point to a real
> possibility of constitutional error." (internal quotation marks omitted)).  Accordingly,
> the model form available to aid prisoners in filing their habeas petitions instructs in
> boldface:
>
> > "**CAUTION**: **You must include in this petition <u>all</u> the grounds for
> > relief from the conviction or sentence that you challenge.  And
> > you must state the facts that support each ground.  If you fail to
> > set forth all the grounds in this petition, you may be barred from
> > presenting additional grounds at a later date.**"  Petition for Relief
> > From a Conviction or Sentence By a Person in State Custody, Habeas
> > Corpus Rules, Forms App., 28 U.S.C., P. 685 (2000 ed., Supp. V)
> > (emphasis in original).
>
> A prime purpose of Rule 2(c)'s demand that habeas petitioners plead with
> particularity is to assist the district court in determining whether the State should be
> ordered to "show cause why the writ should not be granted."  § 2243.  Under Habeas
> Corpus Rule 4, if "it plainly appears from the petition . . . that the petitioner is not
> entitled to relief in the district court," the court must summarily dismiss the petition
> without ordering a responsive pleading.  If the court orders the State to file an
> answer, that pleading must "address the allegations in the petition." Rule 5(b).[19]

---

[18] Rules Governing Section 2254 Cases in the U.S. Dist. Courts, Rule 2(c) (2011).

[19] *Mayle v. Felix*, 545 U.S. 644, 655-56 (2005).

In his Petition to this Court, Brunson has stated his grounds in merely conclusory terms, unsupported by facts or any legal argument.  Brunson has the obligation to not only state his grounds for relief, but also the facts that support those grounds.  Brunson "bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated."[20] Although it is not required to do so, the Court has, where necessary and appropriate, looked to Brunson's brief in the Appellate Division to determine the factual and legal bases for his claims.

## IV.  DISCUSSION

### A.    Exhaustion/Procedural Bar

Respondent contends that because Brunson raised his claims of instructional error, the first, second, and fourth grounds, solely in terms of state law on direct appeal, he has not properly exhausted his state-court remedies.  Respondent further claims that because the Appellate Division held that Brunson's objections to the instructions challenged in his first and second ground were unpreserved for review, he is procedurally barred from raising those claims before this Court.

This Court agrees that, if Brunson has not properly exhausted his state-court remedies, those claims are subject to dismissal.[21]  Likewise, this Court agrees that because he did not preserve his first and second grounds, Brunson is procedurally barred from bringing them in this proceeding.[22]  In this case, however, Brunson has also contended that trial counsel was ineffective in failing to object to the jury instructions he challenges in this first and second

---

[20] *Hawkins*, 460 F.3d at 246 (internal quotation marks and citation omitted).

[21] 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases).

[22] *Harris v. Reed,* 489 U.S. 255, 260 (1989); *Rhagi v. Artuz*, 309 F.3d 103, 106-07 (2d Cir. 2002) (unpreserved for review).

grounds.  Consequently, notwithstanding the failure to exhaust or procedural bar on the merits,

this Court must nevertheless determine whether the questions raised in those two grounds are

meritorious, and whether there is a reasonable probability that the verdict would have been

different absent the constitutional error in determining whether trial counsel was ineffective in

failing to properly object.[23]  That factor does not exist with respect to the fourth ground.

<u>Ground 4:  Failure to Instruct on Definition of Sodomy</u>

Brunson argues that because the victim had threatened Brunson with forcible sodomy the

trial court should have instructed the jury on the definition of forcible sodomy.  The Appellate

Division disagreed with Brunson:

> Specifically, [Brunson] takes issue with County Court's refusal to provide the
> jury with a definition of the term "forcible sodomy."  He also claims that the court
> committed reversible error when it instructed the jury that [Brunson] was under a
> duty to retreat before using deadly physical force even though he claimed that the
> victim had attempted to forcibly sodomize him.  As for the court's refusal to define
> forcible sodomy, this is such a well understood term that it is simply not reasonable
> to assume that the jury needed the term more fully described to be sure that there was
> not "any possible confusion" as to what [Brunson] claims prompted his use of deadly
> physical force..[24]

"[The Supreme Court has] long recognized that a mere error of state law is not a denial of

due process."[25]  "Federal courts hold no supervisory authority over state judicial proceedings and

may intervene only to correct wrongs of constitutional dimension."[26]  However, the Court need

---

[23] *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *Mosby v. Senkowski*, 470 F.3d
515, 519 (2d Cir. 2006).

[24] *Brunson*, 892 N.Y.S.2d at 263-64 (citations omitted) (footnote omitted).

[25] *Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (internal quotation marks
and citations omitted).

[26] *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455
(continued...)

not rely on this basis as it may deny the petition on the merits notwithstanding the lack of exhaustion of state court remedies,[27] particularly where the ground raised is plainly meritless.[28]

The Second Circuit laid down a three-part test that a habeas petitioner must satisfy in order to prevail in a case where the state court fails to give a requested instruction.  First, was the instruction required under state law?  Second, if so, did the failure to give the instruction result in the denial of due process?  Third, if so, did the state court's conclusion constitute an unreasonable application of clearly established Supreme Court law?[29]  In this case, the Appellate Division held that, under state law, it was unnecessary to give the requested instruction.  That ends this Court's inquiry.  Brunson is not entitled to relief under his third ground.

## B.    Instructional Errors

The Supreme Court has held that it is a "well-established proposition that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge."[30]  When evaluating whether a jury charge denies a defendant a fundamentally fair trial, the challenged jury instruction must be viewed in the context of the entire charge on the specific subject.[31]  To support a collateral attack on the judgment the question is "whether the

---

[26](...continued)
U.S. 209, 221 (1982)) (internal quotation marks omitted); *see Wainwright v. Goode*, 464 U.S. 78, 86 (1983) (per curiam).

[27] 28 U.S.C. § 2254(b)(2).

[28] *See Rhines v. Weber*, 544 U.S. 269, 277 (2005).

[29] *Jackson v. Edwards*, 404 F.3d 612, 621 (2d Cir. 2005) (citing *Davis v. Strack*, 270 F.3d 111, 124 (2d Cir. 2001)).

[30] *Cupp v. Naughten,* 414 U.S. 141, 146-47 (1973).

[31] *Id.*

ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," not merely whether "the instruction is undesirable, erroneous, or even 'universally condemned.'"[32]   Where the defect is the failure to give an instruction, the burden is even heavier because an omitted or incomplete instruction is less likely to be prejudicial than an instruction that misstates the law.[33]   "The inquiry is whether the trial court's refusal to give the [requested] instruction 'so infected the entire trial that the resulting conviction violates due process.'"[34]   This Court must also bear in mind that the Supreme Court has admonished that the inquiry is whether there is a reasonable likelihood that the jury applied the challenged instruction in a way that violates the constitution and that the category of infractions that violate "fundamental fairness" is very narrowly drawn.[35]   "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process clause has limited operation."[36]   This Court must apply those principles in this case.

<u>Ground 1:  Combining Separate Justification Defenses</u>

Under New York law, Brunson raised two affirmative "justification" defenses for the use of deadly force: (1) repelling deadly physical force; and (2) to defend against an attempted forcible sodomy.[37]   The trial court combined the two into a single instruction.   Brunson contends this was prejudicial error.   The Appellate Division disagreed with Brunson:

---

[32] *Id.*

[33] *See Henderson v. Kibbe,* 431 U.S. 145, 155 (1977).

[34] *Jackson v. Edwards*, 404 F.3d 612, 624 (2d Cir. 2005) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).

[35] *Estelle v. McGuire*, 502 U.S. 62, 72–73 (1991).

[36] *Id*.

[37] N.Y. Penal Law § 35.15[2](a), (b).

Initially, we note that [Brunson's] argument that County Court failed to properly instruct the jury on the charge of justification has not been preserved for our review because he failed to voice any objection to the court's proposed charge at the charge conference or after the instructions had been delivered to the jury and it had commenced its deliberations.  Even if we were to consider the claim, the charge, as delivered, satisfied the court's obligation to instruct the jury regarding fundamental legal principles that are applicable to all criminal cases as well as those that specifically applied to this action.[38]

In addition to being unpreserved, other than a mere conclusory statement, Brunson advances no legal or factual argument to support his contention that the combination of the two defenses into a single charge somehow raises a constitutional issue or prejudiced him.  Here the Appellate Division held that the charge satisfied state law.  That is all that is required.[39]  Brunson is not entitled to relief under his first ground.

Ground 2:  Duty to Retreat Instruction

The trial court instructed the jury that Brunson had a duty to retreat under both of his asserted defenses.  Brunson argues that giving this instruction was error.  The Appellate Division agreed with Brunson, but also held that the error was harmless:

We agree with [Brunson] that County Court erred in instructing the jury that [Brunson] had a duty to retreat before using any force even if he was under a reasonable belief that he was about to be subjected to a "forcible sodomy" by the victim.  While such a duty does not exist in that circumstance we note that a defendant who seeks to justify his or her use of force upon another may only use that degree of force that he or she reasonably believed "to be necessary to defend himself, herself or a third person."  Here, there is simply no reasonable view of the evidence that would support the conclusion that [Brunson's] assault of the victim was a reasonable response to a threat that [Brunson] claimed existed or was in any way limited to that degree of force necessary to defend himself from the victim's attack.  The ferocious and unrelenting nature of the attack was underscored by testimony of correction officers who observed [Brunson] continue to batter and beat the victim

---

[38] *Brunson*, 892 N.Y.S.2d at 263.

[39] *See Waddington v. Sarausad*, 555 U.S. 179, 192 n.5 (2009).

11

long after he had ceased offering any resistance.  Such evidence belies any suggestion that the force employed by [Brunson] was justified or used solely in his self-defense.  In that regard, a correction officer testified that on eight different occasions during the attack, [Brunson] refused to obey orders that he move to the cell's recreation pen and, instead, continued to strike the victim, while shouting "say uncle" and "who wins, who wins."  [Brunson] also is alleged to have told the officers to "get somebody down here fast or I will kill him."  On these facts, it is simply not reasonable to conclude that this jury would have arrived at a different verdict and found [Brunson's] use of force justified even if it had been instructed that at the time [Brunson] first used force on the victim, he was not under an obligation to retreat.[40]

In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state-court criminal proceeding is whether the error had a substantial and injurious effect or influence in determining the outcome.[41]  Based upon the record before it, this Court cannot find that the decision of the Appellate Division was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or that the determination that the jury would not have arrived at a different conclusion had it been properly instructed "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[42]  Nor can this Court find that the Appellate Division unreasonably applied the correct legal principle to the facts of Brunson's case within the scope of *Andrade-Williams-Landrigan*; *i.e.*, the state court decision was not more than incorrect or erroneous, its application of clearly established law was not objectively unreasonable.  Brunson is not entitled to relief under his second ground.

---

[40] *Brunson*, 892 N.Y.S.2d at 264 (citations omitted).

[41] *See Fry*, 551 U.S. at 121 (adopting the *Brecht* standard).

[42] 28 U.S.C. § 2254(d).

C.      **Ineffective Assistance of Counsel**

Brunson, represented by another counsel, challenged the effectiveness of his trial counsel's representation in his CPL § 440.10 motion.  The Franklin County Court denied the motion in an unreported, reasoned decision, and the Appellate Division considered the appeal from that denial concurrently with the appeal from Brunson's conviction.  In rejecting Brunson's ineffective assistance of counsel claims, the Appellate Division noted in general:

> Defendant also claims that County Court erred in denying without a hearing his motion to vacate his judgment of conviction on the ground that he did not receive the effective assistance of counsel.  In support of this contention, defendant identifies a laundry list of his counsel's perceived shortcomings, including the fact that counsel had failed to object to the court's charge on justification and its refusal to define "forcible sodomy."  As previously noted, the content of the court's charge as delivered did not constitute reversible error.  Defendant also complains of counsel's failure to properly advise him of all of the salient details regarding plea offers made by the People and his failure to retain a psychologist to testify in his defense.[43]

Under *Strickland,* to demonstrate ineffective assistance of counsel, Brunson must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[44]  A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment."[45]  Brunson must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.[46]  An analysis that focuses "solely

---

[43]*Brunson*, 892 N.Y.S.2d at 264.

[44] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[45] *Id*.

[46] *Woodford v. Visciotti*, 537 U.S. 19, 22-23 (2002); *Hill v. Lockhart,* 474 U.S. 52, 57
(continued...)

on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."[47]  An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either one of the *Strickland* prongs.[48]

New York's test for ineffective assistance of counsel under the state constitution differs slightly from the federal *Strickland* standard.  "The first prong of the New York test is the same as the federal test; a defendant must show that his attorney's performance fell below an objective standard of reasonableness."[49]  The difference is in the second prong.  Under the New York test, the court need not find that counsel's inadequate efforts resulted in a reasonable probability that, but for counsel's errors, the outcome would have been different.  "Instead, the 'question is whether the attorney's conduct constituted egregious and prejudicial error such that the defendant did not receive a fair trial.'"[50]  "Thus, under New York law the focus of the inquiry is ultimately

---

[46](...continued) (1985).

[47] *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *see Strickland*, 466 U.S. at 687; *see also Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986) ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect."); *United States v. Cronic*, 466 U.S. 648, 658 (1984) ("[T]he right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial.  Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.").

[48] *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

[49] *Rosario v. Ercole*, 601 F.3d 118, 123 (2d Cir. 2010) (citing *People v. Turner*, 840 N.E.2d 123 (N.Y. 2005)).

[50] *Id.* at 124 (quoting *People v. Benevento*, 697 N.E.2d 584, 588 (N.Y. 1998)).

whether the error affected the 'fairness of the process as a whole.'"[51]  "The efficacy of the attorney's efforts is assessed by looking at the totality of the circumstances and the law at the time of the case and asking whether there was 'meaningful representation.'"[52]

The New York Court of Appeals views the New York constitutional standard as being some what more favorable to defendants than the federal *Strickland* standard.[53]  "To meet the New York standard, a defendant need not demonstrate that the outcome of the case would have been different but for counsel's errors; a defendant need only demonstrate that he was deprived of a fair trial overall."[54]  The Second Circuit has recognized that the New York "meaningful representation" standard is not contrary to the federal *Strickland* standard.[55]  The Second Circuit has likewise instructed us that federal courts should, like the New York courts, view the New York standard as being more favorable or generous to defendants than the federal standard.[56]

*Strickland* and its progeny do not mandate this court act as a "Monday morning quarterback" in reviewing tactical decisions.[57]  Indeed, the Supreme Court admonished in *Strickland*:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction and adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel

---

[51] *Id*. (quoting *Benevento*, 697 N.E.2d at 588).

[52] *Id.* (quoting *People v. Baldi*, 429 N.E.2d 400, 405 (N.Y. 1981)).

[53] *Turner*, 840 N.E.2d at 126.

[54] *Rosario*, 601 F.3d at 124 (citing *People v. Caban*, 833 N.E.2d 213, 222 (N.Y. 2005)).

[55] *Id.* at 124, 126.

[56] *Id.* at 125.

[57] *See Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.[58]

In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro, supra,* at 473, 127 S.Ct. 1933. And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See *Yarborough v. Alvarado,* 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").[59]

It is through this doubly deferential lens that a federal habeas court reviews *Strickland* claims under the § 2254(d)(1) standard.[60]

The Supreme Court, applying the "doubly deferential standard," has made clear that when adjudicating ineffective assistance of counsel claims in federal habeas proceedings, unlike the situation on direct review, focus is not on whether counsel's performance fell below the *Strickland* standard. Rather, the focus is on whether the state-court decision holding that counsel

---

[58] *Strickland*, 466 U.S. at 689 (internal citations and quotation marks omitted).

[59] *Knowles v. Mirzayance*, 556 U.S. 111, 121 (2009).

[60] *See id.* (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

was not ineffective constituted an "*unreasonable* application of federal law[,][which] is different from an *incorrect* application of federal law."[61]

> Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.[62]

Ground 6:  Failure to Object to Justification Instruction

As noted above in the discussion of Brunson's first ground, the Appellate Division found there was no error in the combining of the two justification defenses under state law.  Because the combined instruction was correct under state law, there was no colorable basis for counsel to voice an objection.  The failure to make an objection to a jury instruction that lacks merit hardly constitutes a basis for a finding of ineffective assistance of counsel under either prong of the *Strickland-Hill* test.[63]  Brunson is not entitled to relief under his sixth ground.

Ground 7:  Failure to Object to Instruction on Necessity to Retreat

Because the Appellate Division found that the "duty to retreat" instruction should not have been given, this Court assumes *arguendo* that the first-prong of the *Strickland* test—trial counsel's representation was not within the acceptable range of competence—has been met.  On the other hand, the second prong—prejudice—has not.  Because, as noted in discussing the second ground the Appellate Division correctly determined the outcome would not have differed had the jury been correctly instructed, the failure of trial counsel to object to the improper jury

---

[61] *Richter*, 131 S. Ct. at 785 (emphasis in the original); *see Rosario*, 601 F.3d at 126-27 (a state prisoner's ineffective assistance of counsel claim must be reviewed under a standard more deferential than simply whether that the state-court decision was incorrect).

[62] *Richter*, 131 S.Ct. at 786.

[63] *See Fretwell*, 506 U.S. at 374.

instruction did not prejudice Brunson's defense.  Consequently, this Court cannot say that the decision of the Appellate Division was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[64]  Nor, viewing the matter through the doubly-deferential lens of *Mirzayance* and *Richter*, can this Court find that the state court unreasonably applied the correct legal principle to the facts of the Brunson's case within the scope of *Andrade-Williams-Landrigan-Richter*; *i.e.*, the state court decision was not more than incorrect or erroneous, its application of clearly established law was not objectively unreasonable.  Brunson has failed to establish that his defense was prejudiced, as required by *Strickland-Hill*.  Brunson is not entitled to relief under his seventh ground.

Ground 8:  Plea Bargain

According to Brunson, his trial counsel failed to explain the terms of the plea bargain and the legal implications of rejecting the People's pre-indictment plea offer.  The Appellate Division rejected Brunson's contentions:

> As for the plea offers, the People, before the matter was presented to the grand jury, proposed that [Brunson] plead guilty to manslaughter in the second degree in full satisfaction of all charges pending against him and he would receive a prison term of 7 1/2 to 15 years.  This offer carried with it an admonition that if rejected and [Brunson] was convicted after a trial, an application would be made by the People that he be adjudicated a persistent violent felony offender and a minimum prison term of 12 years to life be imposed as his sentence.  [Brunson] acknowledges being informed of the offer to allow him to plead guilty to manslaughter, but denies ever being told by his counsel that, if he rejected the proposed plea, an application would be made that he be adjudicated a persistent violent felony offender.

---

[64] 28 U.S.C. § 2254(d).

"Meaningful representation by counsel includes the conveyance of accurate information regarding plea negotiations, including relaying all plea offers made by the prosecution. [Brunson] had the burden to show that a plea offer was made, that defense counsel failed to inform him of that offer, and that he would have been willing to accept the offer." [Brunson's] claim, in essence, is that, had he known that as a persistent violent felony offender he faced a mandatory life sentence, he would have accepted the People's plea offer. However, it is important to note that [Brunson] faced the same mandatory life sentence if convicted of murder in the second degree and that he repeatedly rejected any offers that would have allowed him to plead to a lesser charge that would have avoided the imposition of a life sentence. In fact, [Brunson], despite his self-serving statements to the contrary, never demonstrated any willingness or inclination to give up his right to trial or accept any plea offer made by the People. Throughout these proceedings, he was adamant that he would prevail at trial and not be convicted of any substantive charge in connection with the victim's death. This conclusion is borne out by letters that [Brunson] wrote to his mother in which he indicated that if he had "copped out" before going to trial he would always wonder if he "could've beat it." [Brunson] also voiced concern that a guilty plea to any charge would compromise a civil action he intended to commence to recover damages for injuries he claimed to have sustained in this altercation. On these facts, even if counsel did not, as [Brunson] claims, advise him of the implications of being adjudicated a persistent violent felony offender, it did not constitute a failure to provide him with meaningful legal representation.[65]

The Appellate Division found that even if his trial counsel had properly advised Brunson of the implications of being adjudicated a persistent violent offender, he would not have accepted the plea.[66] Brunson has not rebutted this finding by clear and convincing evidence, nor has he shown that it was objectionably unreasonable under the facts of this case. As with Brunson's seventh ground, even if Brunson's contentions are accepted and those contentions support a finding that counsel's representation was not with the acceptable range of competence, Brunson has not shown any prejudice. Consequently, Brunson has failed to establish that his defense was

---

[65] *Brunson*, 892 N.Y.S.2d at 264-65 (citations omitted) (footnote omitted)..

[66] The Franklin County Court also noted in its ruling that "[t]here is no indication in any of the motion papers that any judge, at any time, indicated willingness to accept any plea offer that did not involve a life sentence." Docket No. 17-1 at 146.

prejudiced, as required by *Strickland-Hill*.  Brunson is not entitled to relief under his eighth

ground.

### Ground 9:  Inadequate Trial Preparation; Examination by Expert

Brunson contends that trial counsel was ineffective because counsel failed to adequately

prepare for trial by not having Brunson examined by a psychiatrist, review evidence before trial,

or to establish an intervening cause of death.[67]

*Psychiatric/Psychological Examination*

In an affidavit submitted by Brunson's attorney in connection with his CPL § 440.10

motion, his attorney stated:

> 3.  Well prior to the trial of this action I consulted with a psychiatrist, Hugh Butts,
> MD, with the purpose in mind of his examining Mr. Brunson.  Mr. Brunson's
> behavior at the time of the incident led me to believe that he was not responsible for
> his actions.  Dr. Butts examined the video taken during the incident and opined to me
> that indeed Mr. Brunson's behavior warranted psychiatric examination.  Dr. Butts
> requested a $4,000.00 fee.  Mr. Brunson could not afford this.  During the trial of the
> matter I requested the court to order a "730" examination of Mr. Brunson because he
> was again exhibiting strange behavior.  The court refused to order a full fledge [*sic*]
> examination, but did have a social worker talk with Mr. Brunson.  The Social Worker
> opined that Mr. Brunson was in need of therapy.[68]

The Appellate Division rejected the claim that trial counsel was ineffective for failing to

have Brunson examined by a psychologist, holding:

> Nor are we persuaded by [Brunson's] claim that counsel's representation was
> ineffective simply because he failed to employ a psychologist to aid in the defense.
> Initially, we note that counsel may have concluded for strategic reasons that a defense
> dependent upon psychiatric testimony would be inconsistent and would hopelessly

---

[67] Although Brunson raised the intervening cause of death question in his CPL § 440.10
motion, he did not raise it on appeal.  Consequently, Brunson has not properly exhausted his
state-court remedies as to this claim.  Respondent, however, does not raise this defense.

[68] Docket No. 17-1 at 64.

compromise [Brunson's] principal claim that he acted in self-defense and was justified in using force on the victim.  Also, [Brunson's] acquittal of murder in the second degree—an offense requiring a specific intent—and his conviction of the lesser charge of manslaughter in the second degree raises some question whether any such testimony would have added anything to the defense.  Moreover, while counsel's representation of [Brunson] may not have been perfect, he did obtain an advantageous plea offer that [Brunson] ultimately rejected and convinced County Court, over the People's objection, to deliver an instruction to the jury on justification that may, under the facts presented, have been inapplicable and inappropriate.  Counsel, as previously noted, did obtain an acquittal for [Brunson] of the most serious charge in the indictment, made appropriate objections throughout the trial and, in multiple instances, sought mistrials on behalf of [Brunson].  On balance, counsel provided [Brunson] with meaningful representation and vigorously sought throughout the trial to fully protect his legal interests.[69]

As with his other grounds, Brunson's argument is conclusory, terse, and undeveloped. Other than a recommendation for a psychiatric examination, Brunson has produced no indication or evidence of what a psychiatric examination might show.  Indeed, Brunson does not even describe what potential defense, if any, a psychiatric/psychological examination might provide some measure of support for.  There is no indication that any serious consideration could have been given for a mental disease or defect defense, which under New York law requires evidence that at the time he committed the act "he lacked substantial capacity to know or appreciate either: [¶] 1.  The nature and consequence of such conduct; or [¶] 2.  That such conduct was wrong."[70] At most, it appears that Brunson might have been able to obtain a psychiatric or psychological opinion that he suffered an "extreme emotional disturbance."  This defense allows a defendant to show he is guilty of manslaughter, not murder.[71]  As the Appellate Division noted, the jury

---

[69] *Brunson*, 892 N.Y.S.2d at 265-66 (citations omitted).

[70] N.Y. Penal Law § 40.15.

[71] N.Y. Penal Law §§ 125.25[1][a], 125.20[2]; *see People v. Roche*, 772 N.E.2d 1133, 1137-38 (N.Y. 2002).

acquitted Brunson of the murder charge and convicted him of manslaughter rendering the need for any psychiatric evidence questionable.  It certainly would not have affected the outcome of a guilty of Manslaughter in the First Degree.[72]

*CD Recording*

The record reflects that the jury was shown a video tape and a CD recording of the security surveillance cameras taken of the incident.  According to the record, the CD recording was not reviewed by trial counsel prior to its being shown to the jury.  Brunson contends that the failure of the trial counsel to obtain and view this CD recording rendered his representation ineffective.  The Franklin County Court in its decision on Brunson's CPL § 440.10 motion did not separately address this claim, including it in the omnibus finding that the remaining claims did form the basis for a claim of ineffective assistance of counsel.[73]  It does not appear that, although Brunson raised it on appeal, that the Appellate Division separately addressed this claim either.

The fatal flaw in Brunson's argument is that nowhere in any of the documents filed in either the state courts or this Court is there any indication of what possible prejudice Brunson could have suffered as a result of counsel's alleged oversight.  More specifically, there is no indication that the CD recording contained any visual depiction or recording that could have been objected to and excluded from the jury's consideration.  In short, there is no argument that the failure to view the CD recording in any way affected the conduct of the trial or Brunson's

---

[72] N.Y. Penal Law § 125.20.

[73] Docket No. 17-1 at 146.

defense, or that the outcome might have been different.  Brunson has failed to produce any

factual support for either prong of the *Strickland* test.

*Intervening Cause of Death*

Turning to the failure to investigate the intervening cause of death, in his CPL § 440.10

motion Brunson argued that the victim died because he may have been prematurely taken off life

support.  Brunson also asserted that he requested his trial counsel to look into the facts and

circumstances surrounding the victim's treatment at the medical center and the procedures

followed leading up to and concerning the victim's removal from life support.  It is uncontested

that counsel did not make the requested investigation.  Disregarding the failure to properly

exhaust this ground, it is based upon nothing more than sheer speculation and conjecture.  In his

affirmation in support of his CPL § 440.10 motion, Brunson alleged:

> 33.     Upon information and belief, the medical records show that Quintana
> was prematurely removed from life support systems.  The documents establish that
> Quintana arrived at the Albany Medical Center on May 12, 2000 at 12:45 p.m.  He
> was pronounced dead on May 13, 2000 at 2:30 p.m. and removed from life support
> systems at 3:40 p.m that day.  According to <u>People v. Eulo</u>, 63 N.Y.2d 341 (1984),
> 482 N.Y.S.2d 436, fn 15 at page 442 after clinically determining brain death, this
> finding is to be confirmed at least 24 hours later and through the reading of an EEG.
> 34.     The papers your deponent received from the court do not show the
> times when either the first test was done or the second test was done, or whether an
> EEG was ever preformed to confirm the finding of "Brain Death".  If the hospital did
> not follow accepted medical procedures and prematurely removed Quintana's organs
> through either "gross negligence or the intentional wrongdoing of doctors", this
> would have constituted an intervening act and interrupt the chain of causation.
> "Thus, the propriety of the medical procedures is integral to the question of
> causation."  See, <u>People v. Eulo</u>, at page 359.[74]

---

[74] Docket No. 17-1 at 24.

Trial counsel unquestionably has a duty to investigate.[75]  In this case, assuming *arguendo* that in failing to make the requested investigation trial counsel breached the standard of reasonable competence, Brunson must still establish the second prong under *Strickland*—prejudice.  In order to establish prejudice, Brunson must show that a reasonable investigation would have uncovered facts that would logically tend to establish that the victim's death was caused by a legally-recognized intervening cause, i.e., "the gross negligence or intentional wrong doing by the doctors."  Brunson does not contend and the record does not reflect that at any point in the state court proceedings, including in his CPL § 440.10 motion, did Brunson requested an evidentiary hearing in which Brunson might have developed the facts necessary to support his claim of "intervening cause."  Nor, for that matter, has Brunson requested that this Court hold an evidentiary hearing on the issue.  Thus, this Court must decide the question on the record presented.[76]  Brunson "bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated."[77]  Unless counsel's investigation would have uncovered the necessary facts to support the "intervening cause" defense, the failure to conduct such an investigation could not have affected Brunson's defense. Without some evidentiary support for his claim of an "intervening cause," granting a writ of habeas corpus in this case would be inappropriate.[78]  Based upon the record before it, this Court

---

[75] *Strickland*, 466 U.S. at 690.

[76] *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-99 (2011); *see Townsend v. Sain*, 372 U.S. 293, 312-13, 319 (1963), *overruled on other grounds by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992), *superceded in part by statute*, 28 U.S.C. 2254(e)(2) (1996).

[77] *Hawkins*, 460 F.3d at 246 (internal quotation marks and citation omitted).

[78] *Id.* (citing *Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a
(continued...)

24

cannot find that Brunson is entitled to relief under his intervening cause of death claim.

Accordingly, Brunson is not entitled to relief under his ninth ground.

**D.    Remaining Grounds**

Ground 3:  Mistrial re: Shackling

Brunson argues that he was entitled to a mistrial.  In rejecting Brunson's arguments the

Appellate Division held:

> [Brunson] also claims that County Court should have ordered a mistrial after it learned that some members of the jury had inadvertently seen him in restraints as he was being transported outside the courtroom by officials of the Department of Correctional Services.  We disagree.  County Court's response to this incident was, in every way, measured and appropriate.  It admonished the jurors that they should not draw any adverse inference against [Brunson] as a result of this observation, and the court received credible assurances from each of the jurors that his or her verdict would be based solely upon the evidence introduced at trial.  In that regard, it was simply not practical to expect that this jury would not know that [Brunson] had been incarcerated in a state prison facility at the time of this incident and was still in custody while he was on trial.  As such, it cannot be said that [Brunson] suffered any meaningful prejudice from this encounter, and his motion for a mistrial was properly denied
>
> We arrive at the same conclusion with respect to [Brunson's] claim regarding County Court's decision to place him in ankle restraints after the trial had commenced.  To be sure, "[Brunson] may not be physically restrained before the jury unless there is a reasonable basis, articulated on the record, for doing so."  Here, County Court was informed by a correction officer of security concerns that he had regarding [Brunson] during the trial and that, when questioned by the court in that regard, [Brunson] stated, "I can't take it no more . . .  The only answer is put some restraints on me."  When the court spoke to [Brunson] about these comments and asked whether he needed to be restrained, [Brunson] would not give any assurance that he could control his emotions during the trial and specifically stated "you probably won't see it until it reaches a certain point that I can't hold it in anymore."  Therefore, the court's decision to order the use of ankle restraints was, under the

---

[78](...continued)

federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

circumstances, a reasonable response to the apparent threat that [Brunson] presented to himself as well as to others in the courtroom.[79]

The Supreme Court has observed that shackling, although an "inherently prejudicial practice . . . [is] permitted . . . where justified by an essential state interest specific to each trial."[80]  "The law has long forbidden routine use of visible shackles during the guilt phase; it permits a State to shackle a criminal defendant only in the presence of a special need."[81]  The Court then held:

> Thus, where a court, without adequate justification, orders the defendant to wear shackles that will be seen by the jury, the defendant need not demonstrate actual prejudice to make out a due process violation.  The State must prove beyond a reasonable doubt that the [shackling] error complained of did not contribute to the verdict obtained.[82]

The Supreme Court has yet to define the parameters of what constitutes "adequate justification" for the use of restraints.  Brunson has not cited any case in which it was held that the factors considered by the Franklin County Court in this case do not constitute adequate justification for the use of restraints in this case.  Nor has independent research by this Court discovered any such case.  Because "adequate justification" is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.[83]  Accordingly, given the total absence of federal authority on the adequacy of the justification for

---

[79] *Brunson*, 892 N.Y.S.2d at 266-67 (citations omitted).

[80] *Holbrook v. Flynn*, 475 U.S. 560, 568-69 (1986) *see Illinois v. Allen*, 397 U.S. 337, 344 (1970) (physical restraints detract from the dignity and decorum of court proceedings, and on that basis alone are disfavored).

[81] *Deck v. Missouri*, 544 U.S. 622, 626 (2005).

[82] *Id*. at 635 (citing *Chapman v. California*, 386 U.S. 18 (1987)).

[83] *See Mirzayance*, 556 U.S. at 121; *Alvarado,* 541 U.S. at 664.

the use of restraints in this case, this Court cannot say that the decision of the Appellate Division was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[84] Brunson is not entitled to relief under his third ground.

Ground 5:  Sentence

Brunson contends that the Franklin County Court improperly penalized him for going to trial by imposing the maximum sentence of twenty-five years to life.  The Appellate Division rejected Brunson's position:

> Finally, we are not persuaded that [Brunson's] sentence was harsh and excessive.  Considering his status as a persistent violent felony offender and the brutal nature of the attack he inflicted upon the victim, we do not find that any extraordinary circumstances exist or that the sentence imposed was an abuse of County Court's discretion to warrant a reduction of his sentence.  Furthermore, we find no evidence to support [Brunson's] claim that this particular sentence was imposed in retaliation for his refusal to give up his right to a trial or to enter a guilty plea.[85]

As with his first ground, Brunson sets forth nothing more than a conclusory statement unsupported by any factual or legal argument.  In general, no federal constitutional issue is presented when the sentence imposed by a state court is within the range allowed by state law.[86] As did the Appellate Division, this Court can "find no evidence to support [Brunson's] claim that

---

[84] 28 U.S.C. § 2254(d); *see Eisemann v. Herbert*, 401 F.3d 102, 110 (2d Cir. 2005); *McKinney v. Artuz*, 326 F.3d 87, 103 (2d Cir. 2003).

[85] *Brunson*, 892 N.Y.S.2d at 267 (citations omitted).

[86] *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992).

this particular sentence was imposed in retaliation for his refusal to give up his right to a trial or to enter a guilty plea."[89]  Brunson is not entitled to relief under his fifth ground.

## V.  CONCLUSION AND ORDER

Brunson is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[90]  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[91]

The Clerk of the Court is to enter judgment accordingly.

Dated:  May 30, 2012.

                                                     /s/ James K. Singleton, Jr.
                                              JAMES K. SINGLETON, JR.
                                              United States District Judge

---

[89]  *Brunson*, 892 N.Y.S.2d at 267.

[90]  28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El v. Cockrell*, 537 U.S.322, 327 (2003))).

[91]  *See* Fed. R. App. P. 22(b); Second Circuit R. 22.